UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LAVELL D. LEWIS, | |
| Plaintiff, | Case No. C15-1633-JLR-JPD |
| v. | |
| KING COUNTY JAIL, *et al.*, | REPORT AND RECOMMENDATION |
| Defendants. | |

INTRODUCTION AND SUMMARY CONCLUSION

This is a civil rights action brought under 42 U.S.C. § 1983. Plaintiff Lavell Lewis filed this action in October 2015 while he was confined at the King County Correctional Facility in Seattle, Washington.[1] He alleges in his amended civil rights complaint that defendants violated his federal constitutional rights by placing him in administrative segregation on phone deadlock, and by denying him fair hearings on his appeals of the decisions to retain him on phone deadlock. Plaintiff identifies the King County Jail, the King County Prosecutor's Office, Special Investigations Unit Sergeant Jennifer Schneider, and Sergeant Dean Owens as defendants in this

---

[1] A review of the Washington Department of Corrections website reveals that petitioner is now in state custody and that he is currently confined at the Washington State Penitentiary in Walla Walla, Washington. *See* Washington State Department of Corrections, http://www.doc.wa.gov/information/inmate-search (last visited Oct. 6, 2016).

REPORT AND RECOMMENDATION - 1

action. Plaintiff seeks dismissal of his criminal cases, immediate release from telephone deadlock and return to general population, and financial compensation for time spent in administrative segregation.

Defendants now move for summary judgment. Plaintiff has been advised of the summary judgment requirements pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998), but has filed no response to defendants' motion. The Court, having reviewed defendants' motion for summary judgment, and the balance of the record, concludes that defendants' motion should be granted, and that plaintiff's amended complaint and this action should be dismissed with prejudice.

## BACKGROUND

Plaintiff was booked into the King County Correctional Facility (KCCF) on March 27, 2015, and was placed into close security housing based on his past in-jail behavior, his behavior at Washington Department of Corrections facilities, and his criminal history. (Dkt. 26 at 3.) At the time plaintiff was booked into KCCF, there were charges pending against him under King County Superior Court cause number 14-1-06831-6 (felony violation of a no-contact order and residential burglary, both with domestic violence designation). (*See* Dkt. 27 at 1.) Subsequently, charges were filed under two additional King County Superior Court cause numbers, 15-1-02082-6 (promoting commercial sex abuse of a minor, rape of a child in the 3rd degree, and tampering with a witness) and 15-1-04717-1 (child molestation in the 1st degree). (*Id.*)

All three of plaintiff's cases had a material witness in common, and this witness was the protected party in a no-contact order with plaintiff as the respondent. (*Id.* at 2.) The no-contact order prohibited plaintiff from contacting the witness based on an extensive history of domestic violence. (*See* Dkt. 25, Ex. D at 1.) In June 2015, King County Deputy Prosecuting Attorney

REPORT AND RECOMMENDATION - 2

(DPA) Benjamin Gauen reviewed plaintiff's jail telephone records and learned that plaintiff had attempted to contact this witness more than 400 times. (Dkt. 25, Ex. D; Dkt. 27 at 2.) Upon listening to recordings of some of plaintiff's completed calls, DPA Gauen discovered that plaintiff was extremely verbally abusive to the witness and that he attempted to dissuade her from cooperating with the prosecution. (*See id*.) On June 12, 2015, DPA Gauen e-mailed the King County Department of Adult and Juvenile Detention (DAJD) and asked that they restrict plaintiff's telephone access to legal counsel because of concerns that plaintiff was not only violating a no-contact order, but was also attempting to tamper with, and perhaps intimidate, a material witness. (*See* Dkt. 26, Ex. A; Dkt. 27 at 2.)

Requests that an inmate be placed on phone deadlock are initially directed to the Special Investigations Unit (SIU) of the DAJD. (Dkt. 26 at 3.) The SIU sergeants collect all necessary background information from the requesting party and then forward the request to the major at the facility where the inmate is housed. (*Id*.) The major then makes the decision to approve or deny phone deadlock. (*Id*.) In plaintiff's case, the DAJD approved DPA Gauen's request and on or about June 15, 2015, plaintiff's classification and housing changed as a result of being placed on phone deadlock. (*See id*. at 3-4.) The only housing placement available to KCCF inmates who are on phone deadlock is administrative segregation because that is the only place in the facility where inmates' phone calls can be closely controlled. (*Id*. at 2.) Inmates placed on phone deadlock have access to telephones only for the purpose of contacting legal counsel. (*Id*.)

Since placement on phone deadlock is a form of administrative segregation classification, such placement triggers a seven day initial review of the classification. (*Id*. at 4.) Thereafter, a classification review is conducted every 30 days to decide whether to continue the phone deadlock housing placement. (*Id*.) Classification review hearings have a built in appeal process.

REPORT AND RECOMMENDATION - 3

(Dkt. 26 at 4.) When an inmate appeals his continued placement on phone deadlock, classification forwards the appeal to SIU, and SIU responds to the appeal and returns it in writing to classification and to the inmate. (*Id.*) Classification requires that SIU confirm the need for phone deadlock with the requesting party every 30 days. (*Id.*) If the requesting party indicates that it still has concerns about the inmate being a tampering risk, DAJD will not change the inmate's housing assignment. (*Id.*) Plaintiff appealed his classification to administrative segregation and phone deadlock status four times, and each appeal was denied based on the prosecuting attorney's request that plaintiff remain on such status. (*See id.*, Ex. B.)

Plaintiff also brought two motions in King County Superior Court under his criminal case numbers asking to be removed from phone deadlock and returned to general population. (*See* Dkt. 25 at 1-2 and Exs. A-F; Dkt. 26 at 5; Dkt. 27 at 2.) King County Superior Court Judge Bill Bowman denied the first of plaintiff's two motions on August 6, 2015, and King County Superior Court Judge Julie Spector denied plaintiff's second motion on January 12, 2016. (*See* Dkt. 25, Exs. E-F; Dkt. 27 at 2.)

On February 17, 2016, plaintiff was convicted by a jury on all counts in cause number 15-1-02082-6. (Dkt. 27 at 2.) On May 26, 2016, plaintiff pleaded guilty to reduced charges in cause numbers 15-1-04717-1 and 14-1-06831-6. (*See id.*) Following entry of the guilty pleas, DPA Gauen rescinded the phone deadlock request because witness tampering was no longer a concern given that there would be no trial. (*Id.*) Plaintiff was reclassified and returned to general population on May 27, 2016. (Dkt. 26 at 5.)

## DISCUSSION

Plaintiff alleges in his amended civil rights complaint that defendants violated his constitutional rights by placing him in administrative segregation on phone deadlock and by

REPORT AND RECOMMENDATION - 4

denying him fair hearings on his appeals of the periodic classification decisions to retain him on phone deadlock status. (*See* Dkt. 10.) Defendants, in their motion for summary judgment, seek dismissal of all of plaintiff's claims. (Dkt. 24.) Defendants present numerous arguments in support of their summary judgment motion, but the Court need only consider the argument that plaintiff has not established any violation of a federal constitutional right.

### Summary Judgment Standard

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there exists "no genuine dispute as to any material fact" such that "the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are facts which might affect the outcome of the pending action under governing law. *See Anderson*, 477 U.S. at 248. Genuine disputes are those for which the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id*.

In response to a properly supported summary judgment motion, the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts demonstrating a genuine issue of fact for trial and must produce evidence sufficient to establish the existence of the elements essential to his case. *See* Fed. R. Civ. P. 56(e). A mere scintilla of evidence is insufficient to create a factual dispute. *See Anderson*, 477 U.S. at 252. In ruling on a motion for summary judgment, the court may not weigh the evidence or make credibility determinations. *Id*. at 248.

### Section 1983 Standard

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and

REPORT AND RECOMMENDATION - 5

(ii) that the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Due Process

When a pre-trial detainee challenges some aspect of his pretrial detention that is not alleged to violate any express guarantee of the Constitution, the issue to be decided is the detainee's right to be free from punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). Such challenges arise under the Fourteenth Amendment Due Process Clause. *Id*. While the Due Process Clause protects pretrial detainees from punishment, not every disability imposed during pretrial detention constitutes "punishment" in the constitutional sense. *Id*. at 537.

The test to be applied in determining whether particular restrictions and conditions imposed as a result of pretrial detention amount to punishment in the constitutional sense is whether there was an express intent to punish, or "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. *Id*. at 538 (quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-169 (1963)).

The Supreme Court has recognized that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546. The Supreme Court has further recognized that prison administrators "should be accorded wide-

REPORT AND RECOMMENDATION - 6

ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell, 441 U.S. at 547.

Defendants assert that they did not place plaintiff on phone deadlock with the express intent of punishing him. (Dkt. 24 at 7.) Rather, the decision was made after finding that plaintiff had used the jail phone system to repeatedly violate a no-contact order and to tamper with a victim/material witness in his pending criminal cases. (*Id.*) Defendants maintain that the purpose of placing plaintiff on phone deadlock was to ensure the safety of the victim/witness who was the recipient of plaintiff's abusive calls and to prevent the commission of additional crimes from within the facility. (*Id.*) Thus, defendants argue, their decision was directly tied to the preservation of order and the maintenance of institutional security. (*Id.*)

Plaintiff offers no evidence that the decision to place him on phone deadlock was made with the express intent to punish him. The Court therefore turns to the question of whether plaintiff's placement on phone deadlock was reasonably related to a legitimate government interest. Plaintiff bears the burden of proving the absence of legitimate correctional goals for the conduct of which he complains. *See Pratt v. Rowland,* 65 F.3d 802, 806 (9th Cir. 1995). Plaintiff fails to meet this burden. The evidence in the record demonstrates that plaintiff's abuse of the jail phone system was significant. Between March 28, 2015 and June 9, 2015, plaintiff placed 456 calls to a number associated with the material witness, an individual whom plaintiff was prohibited from having any contact with at all. (*See* Dkt. 25, Ex. D) The completed calls the prosecuting attorney's office listened to revealed that plaintiff was extremely verbally abusive and threatening to the witness, and that he told her she had better do everything he told her to do

REPORT AND RECOMMENDATION - 7

and exactly as he told her.[2]  (*See* Dkt. 25, Ex. D.)  Placement of plaintiff on phone deadlock where his phone calls could be closely controlled during the pendency of his criminal cases was reasonably related to the legitimate government interests of preserving internal order and discipline, protecting victims and witnesses, and preventing further criminal activity from within KCCF.  Plaintiff's substantive due process claim therefore fails.

Plaintiff complains not only of his placement on phone deadlock, he also complains that the appeal process through which he should have been able to challenge this placement was not available to him.  (Dkt. 10 at 4.)  Plaintiff maintains that the review, which was conducted every 30 days, consisted of classification personnel e-mailing the prosecutor's office to ask if they wanted plaintiff out, and then bringing the review paper to plaintiff's door with the prosecutor's request that plaintiff remain on phone deadlock.  (Dkt. 10 at 4.)  Plaintiff complains that he was never interviewed during the review, and that this process violated his right to a fair hearing because there was effectively no way to challenge the prosecutor's request.  (*See id*.)  However, plaintiff's placement on phone deadlock was an administrative action and not a disciplinary action, and plaintiff makes no showing that he had any constitutional right to a hearing under such circumstances.  Moreover, as defendants correctly note, plaintiff had no constitutional right to any specific appeal procedure.  *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).  Accordingly, plaintiff's procedural due process claim fails as well.

## Sixth Amendment

Plaintiff also appears to assert in his amended complaint that defendants violated his Sixth Amendment rights when they failed to approve "other legal numbers" which he was

---

[2] The evidence in the record is that 175 of the 456 calls attempted by plaintiff were completed.  (*See* Dkt. 25, Ex. D at 2.)

REPORT AND RECOMMENDATION - 8

entitled to access because of his pro se status, and that his continued confinement on phone deadlock prevented him from contacting witnesses who could help prove his innocence. (*See* Dkt. 10 at 3-4.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also*, *Gideon v. Wainwright*, 372 U.S. 335, 342-43 (1963). A criminal defendant also has a right, under the Sixth Amendment, to refuse the assistance of counsel and to represent himself in criminal proceedings. *See Faretta v. California*, 422 U.S. 806 (1975). A criminal defendant does not, however, have a constitutional right to "hybrid" representation. *United States v. Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).

Plaintiff was appointed counsel in all three of his criminal cases, and plaintiff makes no claim that he was denied telephone access to his assigned counsel during the period of time he was on phone deadlock.[3] (*See* Dkt. 21 at 2.) Plaintiff had no right to conduct his own defense while represented by counsel and, thus, his inability to directly contact witnesses did not implicate Sixth Amendment concerns. Finally, the Court notes that exhibits attached to plaintiff's complaint demonstrate that he did, in fact, have additional phone numbers approved in late 2015, including numbers for Columbia Legal Services, the King County Ombudsman's Office, and the Seattle ACLU Intake Line. (*See* Dkt. 10-1 at 5.) The fact that these numbers were apparently not approved as quickly as plaintiff would have preferred does not implicate

---

[3] In March 2016, shortly after plaintiff was convicted on all counts in case 15-1-02082-6, plaintiff moved to represent himself in the child molestation case which was still pending. (*See* Dkt. 21 at 2; Dkt. 27 at 2.) King County Superior Court Judge Dean Lum granted plaintiff's motion and ordered that the Department of Public Defense provide plaintiff an investigator. (*See* Dkt. 21 at 2-3.) Judge Lum specifically advised plaintiff that he would still be subject to all jail policies and procedures, and that he may not be able to contact witnesses in his case, restrictions which plaintiff acknowledged he understood. (*Id.* at 3.)

REPORT AND RECOMMENDATION - 9

constitutional concerns given that plaintiff was represented by counsel during the relevant period of time.  In sum, plaintiff fails to establish any violation of his Sixth Amendment rights.

## CONCLUSION

As plaintiff fails to establish any violation of a federal constitutional right, this Court recommends that defendants' motion for summary judgment be granted, and that plaintiff's amended complaint and this action be dismissed with prejudice.  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **November 14, 2016**.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed.  Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **November 18, 2016.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 24th day of October, 2016.

*James P. Donohue*
_____
JAMES P. DONOHUE
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 10